IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CV-320-BO

JOANNE HONN, Plaintiff,

v.

THE TOWN OF PIKEVILLE, Defendant.

ORDER

This cause comes before the Court on defendant's motion for partial summary judgment [DE 21]. Plaintiff has responded and the motion is ripe for ruling. For the following reasons, the motion is granted.

BACKGROUND

The Town of Pikeville employed plaintiff as town clerk. [DE 27, ¶ 1]. Plaintiff prepared checks for payment of the town's financial obligations and maintained employment and payroll records for the town. *Id.* at ¶ 2. After Hurricane Florence damaged the town in 2018, it received monetary grants for repair and reconstruction from the Federal Emergency Management Agency (FEMA) and the North Carolina Department of Public Safety (NCDPS). *Id.* at ¶¶ 5, 6. Thereafter, checks from the town's account issued to various affected entities, including a check for $1,779.08 made out to plaintiff. *Id.* at ¶¶ 7, 8. The parties dispute whether plaintiff herself signed the check as payer on behalf of the town. *See id.*

On May 6, 2020, the town's attorney Harry Lorello notified plaintiff that the Town Board of Commissioners had voted to dismiss her. *Id.* at ¶ 12. The notice contained detailed grounds for plaintiff's dismissal:

> (1) Unauthorized altering of time between sick and vacation; (2) willfully refusing to perform assigned tasks including reconciling bank accounts, forcing the Town to incur additional expenses in the amount of $5,000 and constituting direct insubordination; (3) failing to abide by the Town's mandate requiring "punching in" and "punching out," with over 100 documented instances of Plaintiff's failure to comply with this policy, despite repeated e-mails and directives from the Town to correct this issue; (4) keeping a second, unauthorized set of books for time and payroll on Plaintiff's work computer rather than utilizing the Town's payroll system, resulting in a discrepancy between the payroll system and Plaintiff's unauthorized records; (5) "penciling in" time-cards; and (6) unauthorized self-awarding of compensatory time, violating Section 9 of the Town's Personnel Policy, which states that employees in exempt positions, such as the Town Clerk, do not receive pay for hours worked in excess of normal work periods.

*Id.* at ¶ 13; [DE 22-4]. Plaintiff disputes the truth of all these allegations, but not that they appeared in her notice of dismissal or that they served as the purported basis for her termination. [DE 27, ¶ 13].

On June 1, 2020, less than a month later, the Board voted to reinstate plaintiff to her former position, and plaintiff returned to serve as town clerk. *Id.* at ¶ 27. On June 2, 2020, the very next day, town administrator Lisa Jones reported to the Wayne County Sheriff's Department that plaintiff had embezzled funds. [DE 26-3, ¶ 89]. On June 17, plaintiff was arrested in her workplace and charged with embezzlement and obtaining property by false pretense. [DE 27, ¶ 29]. The town terminated her salary and benefits that same day and advised her to remain away from the town office. *Id.* at ¶ 30. On December 6, 2022, the criminal charges against plaintiff were dismissed. *Id.* at ¶ 31.

Plaintiff now sues the town, alleging claims based on (1) denial of procedural due process under 42 U.S.C. § 1983 of the United States Constitution and Article 1, Sections 1 and 19 of the North Carolina Constitution; (2) denial of substantive due process under 42 U.S.C. § 1983 of the United States Constitution and Article 1, Sections 1 and 19 of the North Carolina Constitution; (3) denial of equal protection and due process under the North Carolina Constitution; and (4) recovery

of salary and benefits allegedly due her as a public officer. Plaintiff moved for partial summary judgment on the first two causes of action. [DE 21].

## ANALYSIS

A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Where, as here, the nonmoving party bears the ultimate burden of proof at trial, the moving party may discharge its initial burden at summary judgment by 'showing . . . that there is an absence of evidence to support the nonmoving party's case.'" *Anderson v. Diamondback Inv. Grp., LLC*, 117 F.4th 165 (4th Cir. 2024) (quoting *Celotex*, 477 U.S. at 325 (1986)).

If that burden has been met, the nonmoving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under the governing law." *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (internal quotation marks and citations omitted). Speculative or conclusory allegations will not suffice. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

Defendant's motion first relies on plaintiff's lack of a liberty or property interest to form the basis of her due process claims. "In assessing a procedural due process claim, unless there has been a deprivation of a protected liberty or property interest by state action, the question of what process is required is irrelevant, for the constitutional right to due process is simply not implicated." *Iota Xi Chapter Of Sigma Chi Fraternity v. Patterson*, 566 F.3d 138, 146 (4th Cir. 2009) (cleaned up). The same is true of substantive due process claims.

Plaintiff had neither a liberty nor a property interest in continued employment.[1] "North Carolina is an at-will employment state." *Knight v. Vernon*, 214 F.3d 544, 553 (4th Cir. 2000). "As such, an employee-at-will does not have a constitutionally protected right to continued employment and does not have the benefit of the protections of procedural due process." *Young v. Annarino*, 123 F. Supp. 2d 915, 923 (W.D.N.C. 2000).

A liberty interest, however, can also exist in a person's "reputation" or ability "to engage in any of the common occupations of life." *Sciolino v. City of Newport News*, 480 F.3d 642, 646 (4th Cir. 2007). Specifically, "a Fourteenth Amendment 'liberty interest is implicated by public announcement of reasons for an employee's discharge.'" *Id.* at 645–46. To establish a protected liberty interest on this theory, Plaintiff must establish that the charges against her "(1) placed a stigma on [her] reputation; (2) were made public by the employer; (3) were made in conjunction with [her] termination or demotion; and (4) were false." *Id.* at 646 (4th Cir. 2007).

---

[1] Plaintiff has no liberty interest in continued employment with the town. "There is no violation of a liberty interest in the loss of a particular job." *Brewington v. Bedsole*, No. 91-120-CIV-3-H, 1993 WL 819885, at *26 (E.D.N.C. May 14, 1993). Plaintiff also had no property interest in continued employment. "[A] property interest in employment can be created by statute, ordinance, or express or implied contract," and "the sufficiency of the claim of entitlement must be decided by reference to state law." *Pittman v. Wilson Cnty.*, 839 F.2d 225, 227 (4th Cir. 1988). In *Pittman*, the Fourth Circuit found that a county employment policy creating restrictions on the circumstances by which an employee could be discharged did not create a property interest in county employment, because the policy was imposed without "the formality required for the enactment of an ordinance." *Id.* at 229. Plaintiff has not alleged the policies surrounding the Town of Pikeville's employee discharge procedures are formal ordinances.

The first, third, and fourth of these above elements are generally either established or disputed by the parties. The only element seriously at issue is whether the town "made public" its reasons for discharging plaintiff. In *Sciolino*, 480 F.3d 642, the Fourth Circuit clarified what constitutes publication in this context. Alleged harms to reputation alone are insufficient to invoke protection of the Due Process Clause without "some more tangible interests such as employment." *Paul v. Davis*, 424 U.S. 693, 701 (1976). Therefore, *Sciolino* specifically held a plaintiff must demonstrate a likelihood, not just a possibility, that prospective employers or the public at large will inspect the defamatory personnel file. 480 F.3d at 650.

Plaintiff appears to contend that either the notice of dismissal which the town conveyed to her on May 6, 2020, the statements Jones made to the Sheriff's Department on June 2, 2020, or plaintiff's final termination immediately following the criminal charges brought against her on June 17, 2020, were publications that implicate her liberty interest in her reputation.

**I. Notice of Dismissal**

The town's reasons for terminating plaintiff are summarized in its notice of dismissal. [DE 22-4]. Plaintiff, depending on N.C.G.S. § 160A-168(b)(11), contends that this notice is a publication giving rise to a liberty interest in her reputation.

> (b) The following information with respect to each city employee is a matter of public record . . . (11) Date and type of each dismissal, suspension, or demotion for disciplinary reasons taken by the municipality. If the disciplinary action was a dismissal, a copy of the written notice of the final decision of the municipality setting forth the specific acts or omissions that are the basis of the dismissal.

N.C.G.S. § 160A-168(b)(11).

It is plain from this statute that the notice of dismissal is a public record. The fact that the town's reasons for discharging plaintiff are passively available to plaintiff's prospective employers, however, does not elevate the town's conduct to active publication. In *Ledford v.*

*Delancey*, a predecessor to *Sciolino*, the Fourth Circuit explained that a "[p]laintiff has a right that his personnel file contain no substantially false information with respect to his work performance or the reasons for his discharge when that information is available to prospective employers." *Ledford v. Delancey*, 612 F.2d 883, 887 (4th Cir. 1980). In *Ledford*, though, the plaintiff had already alleged the circulation of false information to prospective employers. *Sciolino* established a different standard applicable when a plaintiff has not alleged *actual* circulation, relying instead on *potential* circulation to constitute publication. *Sciolino*, 480 F.3d at 647–648.

The standard expressed in *Sciolino* requires "a likelihood that prospective employers" will "inspect the file." 480 F.3d at 650.

> A plaintiff can meet this standard in two ways. First, the employee could allege (and ultimately prove) that *his former employer has a practice of releasing personnel files to all inquiring employers*. Second, the employee could allege that although his former employer releases personnel files only to certain inquiring employers, that he intends to apply to at least one of these employers. *In either case, he must allege that the prospective employer is likely to request the file* from his former employer.

*Id.* (emphasis added).

Because of N.C.G.S. § 160-168(b)(11)'s mandate, plaintiff has established that the town has a practice of releasing personnel files to inquiring employers. Plaintiff does not allege any likelihood that prospective employers will request the file. She does allege in her amended complaint that the actions of the town rendered her "unemployable." [DE 1-1, p. 43, ¶ 111–112]. However, given that the criminal charges filed against her were brought by a different agency, and plaintiff has not asserted that the Town of Pikeville's publications, rather than the criminal charges, were viewed by her prospective employers or formed the basis for adverse hiring decisions, this statement is conclusory.

Plaintiff might purport that on May 6 when she received the notice of dismissal, the Town of Pikeville itself was a prospective employer that in fact accessed the defamatory statements in that notice. Given that the town reinstated her, this argument would be sophistical and moot.

**II. Jones' Statements to the Sheriff's Department**

On June 2, 2020, a day after the town reinstated plaintiff as town clerk, Jones visited the Sheriff's Department and reported that plaintiff had embezzled funds. [DE 26-3, ¶ 89]. As a threshold matter, although the bringing of criminal charges certainly implicates the liberty interests of the accused, plaintiff's employer itself brought no criminal charges. Its involvement was confined to the report. The inquiry here is whether Jones' statements to the Sheriff's Department, on their own, are a publication implicating plaintiff's liberty interest in her reputation among future employers.

Crucially, immediately before Jones reported plaintiff's alleged embezzlement to the Sheriff's Department, the town had reinstated plaintiff. Jones' statements to the Sheriff were not made "in conjunction with [her] termination or demotion," meaning the statements fail the third *Sciolino* factor. *Sciolino*, 480 F.3d at 646. The United States Supreme Court in *Paul v. Davis*, establishing what has come to be known as the "stigma plus" test, recognized that "[p]ublication of stigmatizing charges alone, without damage to 'tangible interests such as employment,' does not invoke the due process clause." *Johnson v. Morris*, 903 F.2d 996, 999 (4th Cir. 1990) (citing *Paul v. Davis,* 424 U.S. 693, 701 (1976)). For a defamatory statement to implicate a liberty interest, it is not sufficient that it creates a stigma; it must accompany adverse employment action such as termination of government employment.

Plaintiff's case fails the "stigma plus" test. In fact, the employment action most proximate to Jones' visit with the Sheriff was unequivocally positive: plaintiff had just been reinstated. Her

final termination, on June 17, 2020, was the result of charges being brought against her by an entirely different agency than the town. There is no indication the town would have terminated plaintiff based only on Jones' statements to the Sheriff in the absence of criminal charges.

**III. Final Dismissal**

Plaintiff's final, June 17 termination fails to implicate a liberty interest for the same reasons as plaintiff's initial May 6 termination fails to implicate a liberty interest, namely, because plaintiff fails to allege a likelihood that prospective employers would inspect the town's statement of reasons for her termination. Furthermore, the only new relevant information in her personnel file at plaintiff's final termination, as compared to her May 6 termination, was that criminal charges had been brought against her. Even if plaintiff alleged that the town published this information in a public record *and* a likelihood that her prospective employers would inspect her file, the town's publication of plaintiff's criminal charges would independently fail to implicate a liberty interest.

The Fourth Circuit has held that an employer's public announcement of a criminal investigation into its employee's job performances, even when accompanying a termination, is not a constitutional deprivation of liberty. *See Jackson v. Long*, 102 F.3d 722, 730 (4th Cir. 1996). "While there can be no doubt that the announcement of an investigation places suspicion on those persons being investigated, that suspicion is inherent when undertaking any investigation." *See id*

Because the town's conduct deprived plaintiff of no liberty interest, she was not entitled to a name-clearing hearing, and this Court need not reach the issue of whether she was afforded the opportunity for one. Plaintiff's lack of a protected liberty interest renders all remaining factual disputes immaterial, and defendant is entitled to a judgment as a matter of law.

## CONCLUSION

For the foregoing reasons, defendant's partial motion for summary judgment [DE 21] is GRANTED.

SO ORDERED, this 29 day of September 2025.

Terrence Boyle
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE